**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

KLEATUS McMANUS        *

Plaintiff        *

v        *        Civil Action No. ELH-18-878

JOHN MOSS,        *
CARL OLTMAN,
WEXFORD HEALTH SOURCES, INC.,        *
JANE DOE
       *
Defendants
       ***

## MEMORANDUM OPINION

Plaintiff Kleatus McManus, a self-represented Maryland prisoner, filed a civil rights suit on March 26, 2018 (ECF 1), along with exhibits. He alleges that he was provided inadequate medical treatment in 2015 with regard to a mole on his upper lip. [1] McManus seeks $75,000 in damages. *Id.* at 5.

Service of the suit was not obtained on Defendant Jane Doe.[2] However, defendants John Moss, P.A.; Carl Oltman, P.A.; and Wexford Health Sources, Inc. ("Wexford") have moved to dismiss or, in the alternative, for summary judgment. ECF 11. The motion is supported by a memorandum (ECF 11-3) (collectively, the "Motion") and exhibits. McManus was notified of his

---

[1] McManus is currently incarcerated at Eastern Correctional Institutional in Westover, Maryland. At the time of much of the medical treatment, McManus was incarcerated at Jessup Correctional Institution, in Jessup Maryland. Both institutions are part of the Maryland Department of Public Safety and Correctional Services.

[2] McManus's sole allegation against Doe is that she assisted during the excision of his mole by applying pressure to stop bleeding. ECF 1 at 4. McManus alleges no facts to suggest that Doe provided constitutionally inadequate medical care to him. Thus, even if Doe had been identified and served, the claims against her would be subject to dismissal for failure to state a claim.

right to file an opposition to defendants' dispositive motion, along with supporting exhibits and declarations. ECF 12. In response, he filed a "Declaration of Medical Documentation To Support Claim," with exhibits. ECF 16. I shall construe the submission as an opposition. Also pending are defendants' Motion to Strike (ECF 17), and McManus's motions for discovery, to appoint counsel, and to proceed in forma pauperis. ECF 17; ECF 18; ECF 20; ECF 21.

No hearing is necessary to resolve the motions. Local Rule 105.6.

## I.     Factual Background

The following facts are not in dispute.

On February 26, 2015, McManus submitted a sick call slip for a bleeding mole on his upper lip. ECF 11-4 at 3. Imelda Ohiri, R.N., examined McManus the same day. ECF 1-1 at 2. McManus, who was then 40 years old, reported that he had the mole for 27 years. He estimated his pain as 3/10. *Id.* Ohiri observed that the mole measured about 2 cm and there was minimal bleeding. *Id.* Ohiri cleaned the area and applied bacitracin, an antibiotic cream. She recommended that McManus continue to use 800 mg. Motrin, previously prescribed[3] for pain, and that he file a sick call slip to see a physician's assistant. *Id.*

Carl Oltman, P.A., examined McManus on February 28, 2015, for a bleeding "lesion" on his face. ECF 1-1 at 3. McManus indicated that the lesion was on his face "all [his] life." *Id.* McManus also reported bleeding when he washed his face. *Id.*

Oltman observed that the lesion was on the right side of the face, oval, isolated, localized, and stable. *Id.* He assessed it as an "irritated nevus." *Id.*; *see also* ECF 11-3 at 2, n. 2 (defining a mole or nevus as a small congenital spot on the skin that is usually dark in color and slightly

---

[3] The record does not indicate why McManus had been prescribed Motrin at an earlier time.

elevated). Oltman prescribed a 30-day treatment of Podocon-25 (podophyllin). ECF 1-1 at 3; *see also* ECF 11-3 at 2, n. 3 (describing Podocon-25 as composed of Podophyllin 25% in Benzoin Tincture and used to remove genital warts).

On March 3, 2015, Oltman applied podophyllin to the "wart" on McManus's upper right lip. ECF 1-1 at 4; ECF 11-3 at 2, n. 4 (defining "wart' as a small harmless tumor of the skin caused by the human papilloma virus or "HPV"). The medical note also indicates that McManus had chronic reflux esophagitis and had been prescribed Prilosec[4] since December 18, 2014. ECF 1-1 at 4.

On March 16, and 23, 2015, Moss treated the "wart" with Podocon-25. ECF 1-1 at 5, 6. Mike Romain, P.A.[5] treated the "wart" with Podocon 25 on March 25, 2015. ECF 1-1 at 7. On March 27 and April 1, 2015, Moss treated the "wart" with Podocon 25. ECF 1-1 at 8, 9. On the copy of the medical notes for April 1, 2015, which McManus filed with this Court, he wrote: "PA John Moss continued to apply application of Podocon-25 (Acid) despite the Podocon-25 treatment ended 3-28-15." ECF 1-1 at 9. Moss again treated the mole with Podocon-25 on April 2, 6, 8, 22, 2015. ECF 1-1 at 10-13.

Moss cauterized and removed McManus' "lesion" on April 29, 2015, and he sent a specimen of it to the lab for identification. ECF 1-1 at 9; ECF 11-5 (Aff. of Jason Clem, M.D.), ¶ 6.[6]

---

[4] Prilosec is a brand name for omeprazole which is used to treat the symptoms of gastroesophageal reflux disease. *See* https://medlineplus.gov/druginfo/meds/a693050.html#brand-name-2.

[5] Romain is not a defendant.

[6] To cauterize is to destroy tissue using a hot or cold instrument, an electrical current, or a chemical that burns or dissolves the tissue. This process may be used to kill certain types of small

Almost one year later, on April 20, 2016, a nurse who was dispensing medications found McManus unresponsive. Andrew Moultrie, M.D. was called to examine McManus. Moultrie wrote the following, in part, with regard to the "urgent" medical "visit," ECF 11-4 at 19:

> The patient was found lying down face up, eyes closed, easily aroused by tactile stimulation (sternal rub). There was no confusion. He states that he had been short of breath and was not able to breath [sic] due to his nose. He stated that he has been having problems breathing out of his nose for the past 10 month. [sic]. He did not admit to passing out. He had no issues with breathing or swallowing. He was able to sit up with assistance and get up on his feet on his own power.
>
> *****
>
> Patient stopped receiving Prilosec around the time that his nasal issues started. Will restart Prilosec 20 mg. for 4 months. Flonase also given.[7]

Further, Moultrie noted that McManus had suffered no loss of consciousness and was "known for manipulation." ECF 11-4 at 19. Moultrie diagnosed McManus as having chronic reflux esophagitis and chronic rhinitis. *Id.* at 20.

On October 6, 2016, Deborah Tabulov, N.P., saw McManus at Eastern Correctional Institution ("ECI") for management of his lower back pain and nasal congestion. McManus informed Tabulov that he had been unable to breathe from his nose since undergoing surgery on his lip about one year ago and that is why he uses Flonase and Aprodine.[8] The physical exam revealed McManus had swollen (edema) nasal mucosa (membrane) and moderate increase in size

---

tumors or to seal off blood vessels to stop bleeding. https://www.cancer.gov/publications/blogs-newsletters.

[7] Flonase is the brand name for fluticasone nasal spray used to relieve sneezing, runny, stuffy, or itchy nose and itchy, watery eyes caused by hay fever or other allergies. *See* https://medlineplus.gov/druginfo/meds/a695002.html.

[8] The generic name for this medication is pseudoephedrine triprolidine. It is a decongestant and antihistamine. *See* https://www.webmd.com/drugs/2/drug-4448/aprodine-oral/details

(hypertrophy) to the turbinates (enlarged turbinates, a part of the nose, can cause nasal obstruction). ECF 11-4 at 21-22; ECF 11-3 at 3, nn. 5-7.

Margaret Vickers, R.N., saw McManus at ECI for complaints of chest pain. ECF 11-4 at 24. McManus admitted to Vickers that he did not have chest pain, but instead wanted the Neurontin dose he had missed that morning. *Id.* McManus did not want Vickers to continue the assessment for back pain. He started yelling, appeared threatening, and returned to his cell. *Id.*

McManus also submitted several sick call slips. On March 30, 2016, he filed a sick call slip complaining of "very bad allergies" that were making it hard for him to breathe. He also complained of a rash on his head, chest, and face, caused by soap that was drying to his skin. ECF 11-4 at 25. On July 1, 2016, he filed a sick call slip asking to see the test results for the specimen from the mole and "the results of his x-ray." He indicated this was his third request and that next time he would file a complaint. *Id.* at 26. On March 15, 2017, McManus complained of trouble breathing due to "sinus allergies." *Id.* at 27.

## II. Plaintiff's Allegations

McManus complains that he sustained injury because the mole on his lip was misdiagnosed by defendants Oltman and Moss. He asserts Oltman diagnosed the mole as a lesion, started treating it by "burning it off with a daily application Podocon-25," and continued this treatment even after he changed his diagnosis from lesion to wart on March 3, 2015. ECF 1 at 3. Further, McManus complains that Moss continued Podocon-25 applications for 22 days beyond the initial 30-day treatment period.

On April 29, 2015, Moss removed a small part of McManus's mole to send for analysis, and then extracted the remainder of the mole and cauterized the wound, assisted by "Jane Doe," who applied pressure to stanch the bleeding. ECF 1 at 4. McManus alleges that during the

procedure he told Moss that he was in pain, and Moss replied, "Look! I got to get that sucker out of there before you bleed to death, I know it hurts but I am almost done. Just hold on a little longer, your [sic] a soldier." ECF 1 at 4.

After the procedure, McManus informed Moss "several times" about numbness and spasms on the right side of his face and "other complications." ECF 1 at 4.[9] Moss advised McManus that numbness and spasms were common and normal after surgery, there was nothing he could do at that time, and recommended McManus continue taking the muscle relaxer prescribed for him to help with the spasm. *Id.* McManus alleges that Moss retired approximately two weeks later. *Id.*

In addition, McManus alleges that he complained to several other physician's assistants about his condition by submitting sick call slips and discussing his concerns in the chronic are clinic, but he received no help to stop the spasm and nerve damage. McManus does not provide any evidence in support of these contentions.

McManus maintains that he was denied adequate medical care because the mole was improperly diagnosed and as a result, he had to undergo three painful medical procedures that caused injury to his face.[10] He faults Moss for failing to take an x-ray of the mole to determine its depth. ECF 1 at 4. Moreover, McManus avers that he should have been referred to a dermatologist. Further, he asserts that the procedure should have been performed under the supervision of a physician. *Id.*

---

[9] McManus does not describe the "other complications." ECF 1 at 4.

[10] McManus wrote on the copy of his medical record dated April 29, 2015, and submitted with the Complaint, that the first procedure was to treat him with Podocon-25, the second was to cauterize the mole, and the third was to perform "surgery" to extract the remainder of the wart. ECF 1-1 at 14. The evidence in the record does not substantiate the occurrence of the third procedure.

### III. Defendants' Exhibits

In support of defendants' Motion (ECF 11), defendants submitted verified copies of McManus's medical records (ECF 11-4) and an affidavit from Jason Clem, M.D., a licensed physician.  ECF 11-5.  Dr. Clem attests, in part, *id.* ¶ 5 (emphasis added):

> Plaintiff's allegation that his condition was misdiagnosed because it was alternatively labeled a lesion, mole and wart is incorrect.  Use of the word lesion simply referred to the fact that it was bleeding.  A mole, or in medical terms a nevus, is simply a discoloration of the skin, sometimes accompanied by a slight thickening of the skin caused by a papillomavirus and also other similar *benign* conditions such as verruca.  Plaintiff's conditions could be described as a mole or a wart.  Podocon-25 is appropriate to treat a wart, however, as in Plaintiff's case, it sometimes fails to resolve the condition.

Dr. Clem explains that after the course of Podocon-25 treatment did not resolve plaintiff's condition, Moss cauterized the wart.  *Id.* ¶ 6.  He opines, *id.*:  "This was an appropriate treatment plan for the condition."  Further, Clem attests that plaintiff "never submitted a single sick call slip complaining that cauterization caused him to have numbness or spasms in his face, or of pain in the affected area."  Nor did McManus complain of facial numbness or spasms to health care providers at chronic care or at sick call visits.  *Id.*  Other than the sick call slip in which McManus initially complained that the mole was bleeding, his only other mention of the mole was to request the biopsy results.  *Id.*

Dr. Clem opines that, to a reasonable degree of medical probability, cauterizing a lip wart would not cause facial numbness or facial spasms.  *Id.* ¶ 7.  Clem also disputes McManus's allegation that the wart should have been x-rayed and required a physician or dermatologist to treat it.  *Id.* ¶ 8.  In Dr. Clem's view, "cauterizing a wart is well within the competency of a mid-level provider."  *Id.*  Moreover, Dr. Clem observes that after the wart was cauterized, McManus never complained to medical personnel of the condition, and thus it appears that the procedure was "successful."  *Id.*

Regarding McManus's allegation of breathing problems, Dr. Clem states that it is "extremely unlikely" that the cauterization caused McManus to be unable to breathe through the nose. ECF 11-5, ¶ 9. Clem notes that nasal obstruction is a fairly common problem, which can be caused by problems including allergies and narrow nasal passages. McManus has both allergies and moderate turbinate hypertrophy, which Dr. Clem opines is the likely cause of his nasal obstruction. *Id.*; *see also* ECF 11-4 at 21-22, 27.

Further, Dr. Clem states that McManus continues to be seen regularly at the chronic care clinic. ECF 11-5, ¶ 11. And, he has access to medical staff at all times via the sick call slip process. *Id.*

## IV. Nondispositive Motions

### A. Plaintiff's Supplement and Defendants' Motion to Strike

After defendants filed their Motion, McManus submitted a Declaration, with three exhibits, labeled Exhibits A, B, and C. He declared that the exhibits provide "expert facts" that are "true and correct." ECF 16. The submission includes information about cancerous or potentially cancerous moles, although there is no evidence that the information applies to McManus.

The first exhibit consists of: 1) one page of text from an unknown source that discusses cancerous skin growths and melanoma; 2) a medical note by John Moss, P.A. dated April 13, 2015, which indicates the wart procedure was completed and McManus received medicine for back pain. ECF 16. The second exhibit appears to be a continuation of the article of unknown provenance in Exhibit A, and also includes a copy the medical report completed by Oltman on February 28, 2015, already discussed above. ECF 16. The third exhibit consists of what appears to be the biopsy report of the specimen removed by Moss, dated May 6, 2015. ECF 16. It describes the specimen as an "intradermal meloncystic nevis with surface erosion." *Id.* at 6. Exhibit C also contains copies

of McManus's medical records, which are already in the record and discussed above. ECF 16 at 8-11.

Defendants moved to strike the filing and the exhibits, as prejudicial. ECF 17. They observe that plaintiff does not identify the nature or purpose of the information. Further, they note that the source of the text regarding cancerous growths is unidentified, and McManus does not explain his reason for submitting the biopsy report. ECF 17, ¶ 5. Defendants also assert that a melanocytic nevus is benign tissue. ECF 17 at 2, n. 1.[11] And, they argue that their dispositive Motion is pending, and if plaintiff were to add new allegations, this would require supplemental briefings and submission, resulting in delay.

I agree that McManus does not state with particularity his reasons for the submission. Nonetheless, I discern no prejudice from the filing. Given plaintiff's pro se status, I shall deny the Motion to Strike.

**B. Second Motion to Appoint Counsel**

McManus requests appointment of counsel, asserting that he is indigent and unable to retain counsel; his imprisonment limits his ability to litigate; the issues are complex; he has limited access to the law library, he is unfamiliar with the law; and counsel is needed to help him identify "Jane Doe" and to present evidence.

There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on

---

[11] McManus does not dispute this assertion.

other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

McManus has demonstrated the ability to articulate his claims on his own or to secure meaningful assistance to do so. There are no extraordinary circumstances presented to warrant appointment of counsel where, as here, the self-represented litigant has such demonstrated ability. Further, McManus's inability to identify Jane Doe is of no significance because the allegation that she assisted in the surgical procedure by applying pressure to stop the bleeding does not amount to a cognizable constitutional claim. Finally, for reasons apparent herein, an evidentiary hearing to resolve the issues in this case is unnecessary.

### C. Motion for Leave to Proceed in Forma Pauperis

On September 28, 2018, McManus filed a second Motion for Leave to Proceed in Forma Pauperis. ECF 21. Previously, on April 10, 2018, I granted McManus leave to proceed in forma pauperis. ECF 5. Therefore, I shall deny ECF 21, as moot.

## V. The Dispositive Motion and the Discovery Motion

### A. Standard of Review

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 342, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of

the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).12

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). However, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638 (4th Cir. 2016)

---

12 In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

(per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, ___ F.3d ___, 2019 WL 350375, at *6 (4th Cir. Jan. 29, 2019); *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure

to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Plaintiff has filed a Motion for an Order Compelling Discovery (ECF 18), pursuant to Fed. R. Civ. P. 37(a). ECF 18. He seeks to compel defendants Moss and Jane Doe to produce documentation of "licenses, job certification, physician assistant national certifying examination, and the United States medical licensing examination." *Id.* at 1. McManus requests this information to show that Moss is not licensed to perform surgical procedures, performed an "experimental surgical procedure which caused nerve damage," and this amounted to "subjective recklessness in a criminal sense," deliberate indifference, negligence, and medical malpractice." *Id.* at 2.

McManus also avers that Moss had "several complaints (write up) for medical violation filed against him by inmates in the Jessup Region for going beyond his medication [sic] expertise and job certification by performing experimental medical procedures." *Id.* at 3. McManus provides no details to corroborate these conclusory allegations.

Defendants oppose the discovery motion on the ground that in this District, discovery may not commence unless ordered by the Court, the parties agree, or a Scheduling Order has been issued. *See* Local Rule 104.4 (D. Md. 2018). ECF 18.[13]

Federal Rule of Civil Procedure 56(d) provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:

  (1) defer considering the motion or deny it;
  (2) allow time to obtain affidavits or declarations or to take discovery; or
  (3) issue any other appropriate order.

McManus does not satisfy the procedural requirements for discovery. He did not provide the requisite Rule 56(d) affidavit with his Motion, and no scheduling order has been issued in this case. And, there is no evidence that Moss performed an "experimental medical procedure" in this case. Moreover, in view of the verified and undisputed evidence in the record, the evidence McManus seeks to discover would not create a dispute of *material* fact, such that a reasonable jury could find in his favor.

Accordingly, I shall deny plaintiff's discovery motion (ECF 18). And, I am satisfied that it is appropriate to address plaintiff's claims in the context of summary judgment, because this will facilitate resolution of the case.

---

[13] Local Rule 104.4 provides: "[D]iscovery shall not commence and disclosures need not be made until a scheduling order is entered."

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law.").

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing

the witness credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"

*Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### B. Discussion

Defendants move for summary judgment on several grounds, including that the claims against Oltman are time-barred; the claims are improperly based on the doctrine of respondeat superior; and defendants were not deliberately indifferent to McManus's serious medical needs, in contravention of the Eighth Amendment.

### 1. Section 1983

Section 1983 of Title 42 of the United States Code provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g.*, *Filarsky v. Delia*, 566 U.S. 377 (2012); *see also Owens v. Balt. City State's Attorney's Office*, 767 F.3d 379 (4th Cir. 2014), *cert. denied sub nom. Balt. City Police Dep't v. Owens*, 135 S. Ct. 1983 (2015). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). In other words, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011), *cert. denied*, 565 U.S.

823 (2011); *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

## 2. Respondeat Superior

Section 1983 requires a showing of personal fault based upon a defendant's personal conduct. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (stating that for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, the plaintiff must affirmatively show that the official acted personally to deprive the plaintiff of his rights). In other words, there is no respondeat superior liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

Liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). With respect to a supervisory liability claim in a § 1983 action, a plaintiff must allege:

> (1) That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to . . . the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 813 (1994); *see also Wilcox*, 877 F.3d at 170.

18

Accordingly, a private corporation, such as Wexford, is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc*., 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co*., 678 F.2d 504, 506 (4th Cir. 1982).

McManus alleges that he sustained injury "due to an employee of the Wexford Health Sources." ECF 1 at 3. He does not rely on any specific action or policy or practice of Wexford that has deprived him of his constitutional rights, nor can one be discerned from the record. Accordingly, Wexford is entitled to summary judgment as a matter of law.

### 3. Statute of Limitations

Defendants assert that McManus's claim against Oltman is time-barred. ECF 11-3 at 6.

"Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)). But, the question of when a cause of action has accrued under §1983 implicates federal law. *See Nassim v. Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Under federal law, the date of accrual occurs when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id*.; *see United States v. Kubrick*, 444 U.S. 111, 122-24 (1979). Maryland law is largely consistent with federal law. Therefore, I shall consider both federal and Maryland cases concerning accrual.

Under Maryland law, "[a] civil action shall be filed within three years from the date it accrues unless another provision of the Code provides" otherwise. Md. Code (2013 Repl. Vol., 2017 Supp.), § 5-101 of the Courts and Judicial Proceedings Article ("C.J."). "'[T]he question of

accrual in § 5-101 is left to judicial determination,' unless the determination rests on the resolution of disputed facts regarding discovery of the wrong." *Poole v. Coakley & Williams Const., Inc.*, 423 Md. 91, 131, 31 A.3d 212, 236 (2011) (citation omitted); *see Bank of New York v. Sheff*, 382 Md. 235, 244. 854 A.2d 1269, 1275 (2004) (stating that summary judgment may be appropriate if there is no dispute of material fact as to whether plaintiff was on inquiry notice more than three years before suit was file); *Frederick Road Limited Partnership v. Brown & Sturm*, 360 Md. 76, 95, 756 A.2d 963, 973 (2000) (explaining that the determination of accrual "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied").

In Maryland, an action typically accrues at the time of the wrong, unless a judicial or legislative exception provides otherwise. *Poole*, 423 Md. at 131, 31 A.3d at 236. Nevertheless, "[r]ecognizing the unfairness inherent in charging a plaintiff with slumbering on his rights where it was not reasonably possible to have obtained notice of the nature and cause of an injury," Maryland has adopted the so-called discovery rule to determine the date of accrual. *See Sheff*, 382 Md. at 244, 854 A.2d at 1275; *Frederick Road Limited Partnership*, 360 Md. at 95, 756 A.2d at 973. "The discovery rule acts to balance principles of fairness and judicial economy in those situations in which a diligent plaintiff may be unaware of an injury or harm during the statutory period." *Dual Inc. v. Lockheed Martin Corp.*, 383 Md. 151, 167, 857 A.2d 1095, 1104 (2004).

Under the discovery rule, "a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong." *Brown v. Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.*, 731 F. Supp. 2d 443, 449 (D. Md. 2010) (citing *Lumsden v. Design Tech Builders, Inc.,* 358 Md. 435, 749 A.2d 796, 801 (2000)), *aff'd*, 495 F. App'x 350 (4th Cir. 2012). Nevertheless, "[t]his standard . . . does not require actual knowledge on the part of the plaintiff,

but may be satisfied if the plaintiff is on 'inquiry notice.'" *Id*. at 167-68, 857 A.2d at 1104 (citing *Am. Gen. Assurance Co. v. Pappano,* 374 Md. 339, 351, 822 A.2d 1212, 1219 (2003); *Doe v. Archdiocese of Washington,* 114 Md. App. 169, 188-89, 689 A.2d 634, 644 (1997)).

A plaintiff is on inquiry notice when the plaintiff "possesses 'facts sufficient to cause a reasonable person to investigate further, and . . . [that] a diligent investigation would have revealed that the plaintiffs were victims of . . . the alleged tort.'" *Dual Inc.*, 383 Md. at 168, 857 A.2d 1095 (quoting *Pennwalt Corp. v. Nasios*, 314 Md. 433, 448-49, 550 A.2d 1155, 1159 (1988)) (alterations in original). *See Kubrick*, 444 U.S. at 123-24. Notice may be actual or constructive. *Poffenberger v. Risser*, 290 Md. 631, 636-38, 431 A.2d 677, 680-81 (1981).

McManus alleges that he was misdiagnosed by Oltman on February 28, 2015. McManus offers no other allegations against Oltman.

The record shows that Oltman treated plaintiff until March 16, 2015. McManus filed suit on March 26, 2018, which is more than three years after Oltman treated the mole. McManus does not refute these assertions or argue that a later date of accrual should control. Accordingly, I conclude that the claim against Oltman is barred by limitations, and Oltman is entitled to summary judgment as a matter of law.

Further, even if the claim were not time-barred, Oltman would be entitled to summary judgment, for the reasons to be discussed, *infra*. In particular, there is no indication that Oltman violated plaintiff's constitutional rights.

### 4. Eighth Amendment

The Eighth Amendment to the Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble,* 429 U.S. 97, 102 (1976); *Scinto v. Stansberry*,

841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). To state an Eighth Amendment claim for denial of adequate medical care, a plaintiff must demonstrate that a defendant's actions or the failure to act amounted to deliberate indifference to a serious medical need. *See Estelle,* 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as "exacting." *Lightsey*, 775 F.3d at 178.

Nevertheless, "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97.

The deliberate indifference standard consists of a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *Farmer*, 511 U.S. at 837; *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A "'serious ... medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one

that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires a determination as to whether the defendant acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40.

In order "[t]o show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178. In other words, deliberate indifference requires a showing that the defendant disregarded a substantial risk of harm to the prisoner. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001).

"True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). As the *Farmer* Court explained, reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Therefore, "[a]ctual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see Scinto,* 841 F.3d at 225; *King*, 825 F.3d at 291; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F.Supp. 352, 361 (D. Md. 1986). Notably, "the Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences. . . ." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. And, an inmate's mere disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jone*s, 554 F.2d 1285 (4th Cir. 1977). Moreover, "[t]he right to treatment is . . . limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added).

Notably, "any negligence or malpractice on the part of ... doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones,* 145 F.3d 164, 166 (4th Cir. 1998). Moreover, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk

was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk . . . ." *Brice*, 58 F.3d at 105.

In *Scinto*, the Fourth Circuit said, 841 F.3d at 226:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official ... had been exposed to information concerning the risk and thus must have known about it...." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Here, the undisputed facts show that McManus's concerns about a bleeding mole were promptly addressed and treated. When Podocon-25 did not resolve the problem, the mole was cauterized, and a sample was sent for a biopsy.

McManus alleges that Moss acted with deliberate indifference to his medical care because the procedure should have been performed by a medical doctor, and no x-ray was taken of the mole. He also asserts that alternate references to the mole as a wart or lesion demonstrate deliberate indifference, medical malpractice or negligence. McManus's assertions are

unsupported by the record and directly refuted by Dr. Clem. Clem avers that the treatments with Podocon and removal of the wart can be performed by a mid-level provider and were medically appropriate. Further, Clem explains there was no medical need for an x-ray. [14]

McManus also claims that he suffered bleeding during the procedure to cauterize the wart and told Moss that he was in pain. Yet, Moss continued the procedure to extract the wart. McManus's alleged verbal exchange with Moss concerning pain during the procedure ("Look! I got to get that sucker out of there before you bleed to death, I know it hurts but I am almost done. Just hold on a little longer, your [sic] a soldier." ECF 1 at 4) does not suggest Moss knew of his actions to remove the wart posed excessive risk to McManus, but rather that Moss appreciated that the procedure was painful and was assuring plaintiff that he almost finished.[15]

Apart from self-reported spasms, numbness, and "nerve damage," there is no record that McManus presented these complaints to medical providers. However, there is evidence stating that such symptoms are highly unlikely to have been caused by the procedures McManus underwent. Further, McManus's breathing problems, first reported to prison medical providers almost one year after the wart was removed, have been determined to be attributable to allergy and turbinate hypertrophy and not, as plaintiff suggests, a complication from the procedure. McManus has filed no declaration or other evidence to refute this information.

Viewing the facts in the light most favorable to McManus, he has failed to show that any defendant acted with reckless disregard to McManus's serious medical needs. There is no genuine

---

[14] Even if the materials McManus sought in his Motion to Compel Discovery (ECF 18) were provided to him, these materials would not create a genuine issue of material fact in this regard.

[15] The parties do not address, nor does the record indicate, whether local anesthesia was administered.

dispute of material fact presented as to the Eighth Amendment claims, and Moss is entitled to summary judgment in his favor.

To the extent McManus presents negligence and medical malpractice claims arising under state law, the court declines to exercise supplemental jurisdiction over them.[16]

## VI. Conclusion

For the foregoing reasons, I shall deny defendants' Motion to Strike (ECF 17); deny plaintiff's Motion for an Order Compelling Discovery (ECF 18); deny plaintiff's Motion to Appoint Counsel (ECF 20); deny, as moot, plaintiff's Motion for Leave to Proceed in Forma Pauperis (ECF 21); and grant defendants' Motion.

An Order follows.


February 27, 2019                                  /s/
Date                                         Ellen L. Hollander
                                             United States District Judge

---

[16] McManus does not allege or provide evidence he complied with the conditions precedent set forth in the Maryland Health Care Malpractice Claims Act (HCMCA), C.J. § 3-2A-01, *et seq.* (2018).